**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDUARDO ANDRE ELY

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No.: 1:25-cv-03988

Judge Honorable Lindsay C. Jenkins

Magistrate Judge Young B. Kim

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT TO
STAY DEFENDANTS' MOTION [35], AND FOR JURISDICTIONAL DISCOVERY**

Plaintiff respectfully moves to stay Defendant Nos. 25 TCMZP, 49 COOMUG, 63 AMBBQ, 64 BKLNJ, 117 AATBR, 139 TTMUG, and 142 TRMUG's (the "Defendants") Motion to Dismiss [35] ("Defendants' Motion"), and requests leave to conduct jurisdictional discovery.

Plaintiff has met the low threshold for jurisdictional discovery by making a colorable showing of personal jurisdiction – alleging, with supporting evidence, that Defendants marketed and offered for sale infringing products to U.S. and Illinois consumers through Temu storefronts. Defendants' incomplete submissions further support the need to take discovery and test the credibility of their jurisdictional claims. The original declarations submitted in support of Defendants' Motion, each signed by the same individual, Wang Yan, offer sweeping, conclusory denials of any relevant U.S. and Illinois contacts, yet provide no evidence to substantiate those assertions. These denials are also contradicted by evidence of Illinois-targeted conduct, including the use of warehouses near Chicago, Defendants' product listings labeled with "Origin: United States," and sales data reflecting nearly $28,000 in U.S.-based revenues. Subsequent filings only deepen these concerns. Defendants' Local Rule 3.2 Notification of Affiliates [34] identifies another affiliate, Liu Yu, who did not submit a declaration, and fails to name any specific corporate

entities. Then, in their Motion to Submit a Supplemental Declaration and Exhibits [38], Defendants introduced, for the first time, four Hong Kong entities allegedly associated with the infringing storefronts, and revealed the operation of at least 19 stores – 12 more than originally identified.

Given Plaintiff's colorable showing of personal jurisdiction and Defendants' inconsistent claims, Plaintiff respectfully requests that the Court (i) stay further briefing on Defendants' Motion to Dismiss, (ii) grant leave to conduct jurisdictional discovery into Defendants' corporate relationships, coordinated operations, and relevant jurisdictional contacts, and (iii) refer the matter to the Magistrate Judge for discovery supervision. This relief is necessary to ensure that the Court's ruling is based on a complete and reliable fact record, not on untested and inconsistent declarations.

## BACKGROUND

Plaintiff is the owner of the "Staying Alive" artwork protected by Copyright Registration No. 2-308-936 (the "Eduardo Ely Work"). [1] at ¶ 5. Plaintiff initiated this action on April 14, 2025, against the Defendants, alleging copyright infringement under the Copyright Act. *See* [1].

| Plaintiff's Copyrighted Eduardo Ely Work | One of Defendants' Infringing Products |
|---|---|
|  | |

*See* [1-1]; **Exhibit 1** (Evidence of Infringement from [20])

On April 29, 2025, this Court issued a Temporary Restraining Order ("TRO") [22] enjoining Defendants from infringing Plaintiff's Eduardo Ely Work and restraining funds in Defendants' Temu accounts. The TRO was extended through May 27, 2025. [30]. All Defendants were served pursuant to the TRO on May 9, 2025. [29].

2

On May 12, 2025, Defendants filed their Motion with seven substantively identical declarations, all signed by Wang Yan, denying jurisdictional contacts with Illinois and the U.S. *See* [35-1]–[35-7]. That same day, Defendants filed a Notification of Affiliates [34] which disclosed an additional affiliate, Liu Yu, who has not submitted a declaration, and failed to identify any corporate entities. Then, on May 19, 2025, Defendants filed a Motion for Leave to Submit a Supplemental Declaration and Exhibits [38], conceding that their original declarations required supplementation and introduced new corporate details and sales screenshots. Plaintiff and Defendants have also engaged in ongoing settlement discussions in an effort to resolve the matter.

## ARGUMENT

Jurisdictional discovery is warranted for three reasons. First, Plaintiff has presented a colorable basis for personal jurisdiction, satisfying the low threshold for obtaining jurisdictional discovery. Second, courts consistently allow jurisdictional discovery where, as here, defendants submit unsupported, self-serving declarations denying jurisdictional contacts, recognizing that the adversarial process involves testing the veracity of such claims. Basic principles of fairness further dictate that Plaintiff should be permitted to test these assertions through limited discovery before the Court rules on a potentially dispositive motion. Third, courts find jurisdictional discovery warranted where, as here, the record reveals ambiguities regarding corporate structures, affiliations, and coordinated operations of defendants.

### I.      Plaintiff Has Satisfied the Low Threshold to Obtain Jurisdictional Discovery

The standard to obtain jurisdictional discovery is low. At this stage, Plaintiff does not need to conclusively prove that personal jurisdiction exists but rather must make a "colorable" showing that it *might* exist. *See In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022) ("A plaintiff must be able to establish a colorable or prima facie showing of personal jurisdiction before discovery should be

permitted."); *Esquivel v. Airbus Americas, Inc.*, 1:20-CV-07525, 2021 WL 4395815, at *2 (N.D. Ill. May 3, 2021) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 877 (7th Cir. 2006)). Specific personal jurisdiction exists where a defendant has purposefully directed its activities at the forum and knew the effects of its contacts would be felt. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010); *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624-25 (7th Cir. 2022). Even where the record is ambiguous or unclear on the issue of jurisdiction, courts routinely authorize jurisdictional discovery to clarify whether sufficient forum contacts exist. *See JT's Frames, Inc. v. Casares,* 16-CV-2504, 2018 WL 835225, at *3 (N.D. Ill. Feb. 13, 2018).

Here, Plaintiff has met this threshold by alleging and providing evidence showing that Defendants' infringing activities were designed to target U.S. consumers, including those in Illinois. *See* [1]; Exhibit 1. By setting up storefronts on Temu, one of the United States' fastest-growing online marketplaces, Defendants knew that they would conduct, transact, and solicit business in the U.S., including Illinois. Whether fulfilling orders themselves or leveraging any Temu fulfillment or delivery services, Defendants availed themselves of Temu's U.S.-facing marketplace infrastructure designed to reach U.S. and Illinois consumers, as evidenced by the Defendants' checkout pages, which all provide that the infringing products will ship from a "Local Warehouse" near a Chicago, Illinois address:



*See* Exhibit 1.

Courts have held that such commercial conduct via interactive websites similar to Temu, such as Amazon, satisfies the requirements for personal jurisdiction. *See Neman Brothers & Associates, Inc. v. The Partnerships, et al.*, 24-cv-05666, Dkt. No. 100 (N.D. Ill. Dec. 10, 2024); *NBA Props., Inc.,* 46 F.4th at 624-25; *Insubuy, Inc. v. Cmty. Ins. Agency*, 10 C 3925, 2010 WL 4659483, at *2 (N.D. Ill. Nov. 9, 2010) (citing *Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010) ("[T]he Seventh Circuit has concluded that maintaining commercial websites that reach throughout the country can establish the willingness to do business with Illinois residents."); *see also Am. Girl v. Zembrka*, 116 F.4th 271, 277-78 (2d. Cir. 2024).

Despite this, Defendants uniformly deny making infringing sales to Illinois or anywhere else in the U.S. *See* [35-1]-[35-7]. These claims are unsupported by any transaction logs, sales data, or fulfillment records. Instead, Defendants rely entirely on their unverified, conclusory claims that their sales were limited. Then, in Defendants' subsequent Motion to File a Supplemental Declaration and Exhibits [38], Defendants continued to insist that no infringing sales were made to the U.S. and provided screenshots that allegedly confirmed that no infringing sales were made. This supplemental filing, however, raises far more questions than it answers. As further detailed in the next section, Defendants supplemental filing revealed that Defendants failed to conduct an

infringement search using the "Item IDs" tied to the original infringing products, opting to use "SPU IDs," "SKU IDs," and "Goods IDs" instead, and that Defendants' operation consists of at least 19 storefronts, not seven as originally discovered. *See* [38]; [38-1]-[38-3].

None of the Defendants' claims negate the fact that they purposely directed their business activities at Illinois and U.S. consumers by marketing their infringing products on Temu and using local warehouses to fulfill infringing product sales. Because Defendants purposefully targeted this District and availed itself of the privileges of conducting business in Illinois, requiring it to defend itself in this forum is neither unfair nor unreasonable. *See NBA Props.*, 46 F.4th at 627 ("no unfairness in making a seller defend a suit in a state where it structured its business to 'easily serve the state's consumers.'"). Additionally, "Illinois no doubt has an interest in protecting its consumers from purchasing fraudulent merchandise." *Id.* Accordingly, Plaintiff has presented a colorable basis for specific personal jurisdiction sufficient to justify jurisdictional discovery.

Even if this Court finds a colorable claim of specific personal jurisdiction lacking, Fed. R. Civ. P. 4(k)(2) provides an alternative basis for establishing personal jurisdiction over these foreign Defendants. Under Rule 4(k)(2), federal courts can exercise personal jurisdiction in cases arising under federal law when a defendant's aggregate contacts with the U.S. as a whole are substantial, even if specific jurisdiction in any single state cannot be established. *See* Fed. R. Civ. P. 4(k)(2); *Central States, Se. & Sw. Areas Pension Fund,* 230 F.3d at 946; *ISI Int'l Inc. v. Borden Ladner Gervais llp,* 256 F.3d 548 (7th Cir. 2001); *Hamann GmbH v. The P'Ships, et al.*, No. 21-cv-03591, Dkt. No. 53 (N.D. Ill. Oct. 8, 2021). Here, Plaintiff's claims arise under federal copyright law, and Defendants, who are based in China, have not identified any state in which they are subject to general jurisdiction. *See* [1]; [35-1]-[35-7]; [38]; [38-1]. The record further shows that Defendants targeted and engaged in business with U.S. consumers by listing products in English, pricing in

U.S. Dollars, using Temu's U.S.-facing marketplace, generating almost $28,000 in U.S. revenue, and relying on local warehouses to sell products. *See* Exhibits 1; **Exhibit 2** (Temu Subpoena Data). Three of the Defendants' storefronts also displayed "Origin: United States" under their "Product Details." *See* Exhibit 1. These U.S.-wide activities support jurisdiction under Rule 4(k)(2) and Plaintiff's request for jurisdictional discovery.

## II. Jurisdictional Discovery is Warranted Given Defendants' Declarations Contesting Plaintiff's Jurisdictional Claims, Which Plaintiff is Entitled to Test

Jurisdictional discovery is particularly warranted where, as here, Defendants attempt to defeat jurisdiction through carefully crafted but unverified declarations. Courts in this district have consistently recognized that the adversarial process entitles plaintiffs to test such submissions. *See Wham-O Holding, LTD. v. The Partnerships*, 1:22-cv-00050, Dkt. No. 70 (N.D. Ill. Sept. 7, 2022); *Zinkia Entm't. v. The Partnerships*, 1:21-cv-00916, Dkt. No. 65 (N.D. Ill. June 1, 2021); *Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg.*, Inc., 19 C 7675, 2021 WL 2433653, at *3 (N.D. Ill. June 15, 2021) ("The two affidavits… raise a few questions…[about] what [the defendant] did or did not do. But the Court considers these subject matters as ripe for jurisdictional discovery."); *Hamann GmbH v. The P'Ships, et al.*, No. 21-cv-03591, Dkt. No. 53 (N.D. Ill. Oct. 8, 2021) (permitting discovery to clarify ambiguities in defendant's jurisdictional claims).

Defendants' declarations here warrant exactly that type of scrutiny. Initially all Defendants submitted declarations from an individual named "Wang Yan" who vaguely introduced themselves only as a "corporate representative" of each Temu store, without any further details as to the corporation they are representing, its corporate structures, or the interrelated operations of the Temu storefronts. *See* [35-1]-[35-7] (all para. 1). Then, in its supplemental declaration [38-1], the same declarant, for the first time, identified themselves as the "Director of Anin Limited, Theyon Limited, Sheon Limited, and Theyin Limited, each of which is incorporated under the laws of

Hong Kong, China." [38-1] at ¶ 1. The declarant then claimed that "Anin Limited registered the Defendants TCMZP and BKLNJ[,] Theyon Limited registered AATBR[,] Sheon Limited registered TRMUG and TTMUG[, and] Theyin Limited registered AAMBBQ and COOMUG[,]" and that none "have ever sold the accused product in the United States." *See* [38-1] at ¶¶ 2, 4. However, this claim is both unverified and questionable.

The screenshots provided with the Defendants' supplemental filing reveal that the search relied on "SPU IDs," "SKU IDs," and "Goods IDs," not the "Item IDs" associated with the infringing listings. *See* **Exhibit 3** (Chart Showing Item IDs and IDs used in Defendants' Search). This raises serious doubts about whether the search actually encompassed the infringing listings at issue. Additionally, Defendants' latest submission was filed with a "Translator's Statement" from linguist Shujing Qiao who attested that to the best of their knowledge and belief "the English translations of the screenshots of the temporary restraining orders and sales information for the 19 stores (whqhus, TTPALACE, AATBR, AKQWA, AMELA, BKLNJ, BLAUUU, COOMUG, ELOLW, HOOCCC, MIAAIM, NANHH, ROBUSTT, TCMZP, TRETROT, TRMUG, TTMUG, TTTCASE) are accurate, word-for-word translation of the original document in simplified Chinese." [38-3] at 36. This attestation demonstrates Defendants' lack of candor as they had only disclosed seven online storefronts and limited their evidence to just those seven stores, without providing any evidence or information as to the other 12 stores' operations or sales.

These evolving representations, inconsistencies, and omissions strongly suggest that Defendants' declarations are neither complete nor reliable. Jurisdictional discovery, therefore, is needed to test the veracity of Defendants' submissions and to determine the true extent of their jurisdictional contacts.

### III. Discovery Is Necessary to Resolve Ambiguities About Defendants' Coordinated Business Conduct and Affiliations

Jurisdictional discovery is further warranted to resolve ambiguities concerning the corporate structures and operations of the Defendants. Courts routinely authorize jurisdictional discovery when plaintiffs present facts suggesting coordinated operations or alter ego relationships between defendants. *See Deckers Outdoor Corp. v. Wolverine Grp. Pty Ltd*, No. 1:24-CV-3164, 2025 WL 1222471, at *3 (N.D. Ill. Apr. 28, 2025); *Nicks v. Koch Meat Co.*, No. 16 C 6446, 2016 WL 6277489, at *5 (N.D. Ill. Oct. 27, 2016) ("It is within the Court's discretion…to permit targeted jurisdictional discovery on Plaintiffs' 'alter ego' [theory]"); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018).

Here, all seven Defendants submitted nearly identical declarations from the same "corporate representative," Wang Yan, who is also named in the single Local Rule 3.2 Notification of Affiliates filed for the group of stores alongside a second affiliate, Liu Yu, who has not submitted a declaration. *See* [34]. In the Defendants' supplemental filing [38], Wang Yan, now identifies themselves as the "director" of four Hong Kong corporations and claimed that these entities registered and operated the Defendant storefronts. *See* [38-1]. Notably, however, no corporate documentation or organizational details were provided to support these claims. Compounding these discrepancies is the Defendants' "Translator's Statement," which revealed the operation of 12 additional online storefronts that the Defendants had not disclosed nor submitted any declarations, data, or jurisdictional evidence for.

Jurisdictional discovery is necessary to confirm whether Defendants' 19 storefronts are part of a unified enterprise operating under common control, and to identify whether any of the four named Hong Kong entities function as a parent company. While Defendants have now claimed that Wang Yan controls all four entities tied to the Defendant storefronts, they have not

clarified the relationships between those entities, how they are structured, or whether any entities sit above them. Nor have Defendants explained how these entities relate to the other 12 storefronts referenced in their own filings, or whether those additional storefronts are controlled and operated by other entities also under common control. The lack of corporate records, ownership disclosures, and inter-entity documentation leaves open serious questions about the true nature of the Defendants' operations and who ultimately directs them.

Accordingly, jurisdictional discovery is warranted to resolve these unresolved structural ambiguities and to confirm the relationships between the declarant Wang Yan, the second affiliate Liu Yu, the four Hong Kong entities, and the additional storefronts omitted from the initial filings.

### IV. Discovery is Needed to Avoid Potential Reliance on Defendants' Unsupported Allegations, Which Would Severely Prejudice Plaintiff

Without discovery, it is impossible to determine the full scope of Defendants' illegal operation, how the stores are managed, how long the Defendants have been selling the counterfeit products, how many storefronts they operate to sell counterfeit products, how many Item IDs they have used to sell infringing products, and whether Defendants are concealing additional information to shield potentially adverse jurisdictional facts from the Court.

Critical questions remain about the true extent of Defendants' illegal operations and corporate identities. These uncertainties go to the heart of Defendants' Motion. Without a complete understanding of Defendants' operational structure and the full scope of their counterfeiting activities, any reliance on Defendants' self-purported facts would be premature and highly prejudicial to Plaintiff, potentially allowing Defendants to shield illicit proceeds through ghost entities and strategic compartmentalization of information.

Given these circumstances, this Court should permit Plaintiff the opportunity to examine Defendants' self-purported facts through jurisdictional discovery before relying on them to decide

on Defendants' Motion. Allowing such discovery will aid in determining the full scope of Defendants' jurisdictional ties to this District and ensure that any reliance on the assertions made in Defendants' Motion is grounded in reliable and verified evidence.

## **CONCLUSION**

Jurisdictional discovery is warranted in light of Plaintiff's colorable showing of personal jurisdiction and the numerous unresolved factual questions raised by Defendants' submissions. Defendants rely on conclusory declarations that deny jurisdictional contacts but fail to provide any supporting documentation. Their representations have shifted over time, revealing new entities, disclosing for the first time that 19 storefronts are involved, and leaving key relationships – such as those among Wang Yan, Liu Yu, the four Hong Kong corporations – entirely unexplained. These evolving and incomplete representations underscore the need for targeted discovery to determine the true scope of Defendants' operations, clarify their corporate affiliations, and confirm their contacts with the forum. Without discovery, the Court would be forced to evaluate Defendants' Motion to Dismiss [35] on a record that is both contested and materially incomplete.

For these reasons, Plaintiff respectfully requests that this Court (i) allow Plaintiff ninety (90) days to conduct written discovery, (ii) allow ninety (90) calendar days after the close of written discovery to conduct oral discovery, and (iii) stay briefing on Defendants' Motion for forty-five (45) calendar days pending the close of oral discovery to respond to Defendants' Motion.

DATED: May 23, 2025                              Respectfully submitted,

                                                 */s/ Keith A. Vogt*
                                                 Keith A. Vogt (Bar No. 6207971)
                                                 Keith Vogt, Ltd.
                                                 33 West Jackson Boulevard, #2W
                                                 Chicago, Illinois 60604
                                                 Telephone: 312-971-6752
                                                 Email: keith@vogtip.com

                                                 ***ATTORNEY FOR PLAINTIFF***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on May 23, 2025, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt